[Crim. No. 388.    Third Appellate District.—August 30, 1917.]

THE  PEOPLE,  Respondent,  v.  GEORGE  CLAYTON,
Appellant.

APPEAL—JUDGMENT AND ORDER DENYING NEW TRIAL—FAILURE TO FILE
BRIEF—AFFIRMANCE OF JUDGMENT.—Where on an appeal from a
judgment and order denying a new trial in a criminal action the
appellant fails to file his brief within the allowed time and makes
no request for an extension, it must be assumed that he has abandoned his appeal, and the court is authorized to affirm the judgment
and order without examining into the merits of the appeal.

APPEAL from a judgment of the Superior Court of
Sacramento County, and from an order denying a new trial.
Malcolm C. Glenn, Judge.

The facts are stated in the opinion of the court.

Ralph H. Lewis, and Grover W. Bedeau, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones,
Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Upon information charging defendant
with the crime of grand larceny he was found guilty as
charged.    He appeals from the judgment of conviction and
from the order denying his motion for a new trial.

The cause was placed on the April calendar and was called
on April 9, 1917, and appellant given thirty days to file opening brief, respondent ten days to reply, appellant ten days,
cause then to stand submitted.    May 9th, appellant was given
ten days from that date in which to file opening brief.    Appellant has filed no brief and has not asked for further time
in which to do so.    We must assume that he has abandoned
his appeal, and hence we are authorized to affirm the judg-

ment and order without examining into the merits of the appeal. We have, however, given the record careful examination and find therein no ground for reversal.

The prosecuting witness, one Equals, arrived at Sacramento about 8 o'clock P. M. on October 3, 1916, and took rooms at the Western Hotel, on K Street between Second and Third Streets. After a hasty toilet in his room he betook himself to the bar of the hotel to spend the evening. He had about $18 in his pocket, from which store he drew not lavishly but with some liberality in treating the frequenters of the bar, all of whom were strangers. Among them was defendant, who drank with Equals several times. About 10 o'clock Equals had become somewhat intoxicated and concluded it was about time to seek the open air, although he testified that he had full control of his mental faculties, albeit his legs were a bit unsteady. He went out on to K Street having, as he testified, two five-dollar gold pieces in one of his trouser's pockets, and five dollars in silver in the other. He also had a knife in one trouser's pocket and a corkscrew, which latter he said he had carried for two years, in the other. Defendant and another man left the saloon at the same time and joined Equals in his quest for fresh air. Together they walked west toward Second Street and along Second north and turned into an alley after going a block or two. Equals was a stranger in the city, not familiar with the streets and did not know just where they went. After entering the alley twenty or thirty feet these men seized Equals roughly, one holding him while the other went through his pockets and took all the money he had, a knife, and a corkscrew. One of them then knocked him down and left him unconscious. About this time Police Officer Addison was on the south side of I Street between Front and Second and, looking down the alley, saw three men enter at the other end from J Street and stop about thirty feet from J Street. His suspicions were aroused and he walked down the alley toward the men to see what they were doing, and presently saw them engaged, "and it looked like there was a scuffle, three men together." Addison went toward them and saw two of these men walking out of the alley toward J Street. He passed Equals lying on the ground and followed these two men, overtaking them "close to K Street." One of the men ran and the other, Clayton, Addison arrested. He took him to the Tremont Hotel, between

First and Second, and "rang for the patrol wagon." Clayton was put into it and Equals was picked up and also put in it and the wagon was driven to the police station, where defendant was searched and there was found in his pockets $15.30, consisting of two five-dollar gold pieces and the balance in silver. A corkscrew was also found in his pocket which Equals at once recognized and identified by marks on it which he described. While defendant was in the patrol wagon the driver saw him make some motion as though putting something under the seat, and, on going out and examining where defendant sat, found a knife, which he brought into the office and asked defendant if it was his. He said it was not, and Equals identified it as his. Equals also declared that Clayton had stolen his money, to which Clayton replied: "You are mistaken, old man; I never saw you before."

The bartender at the Western testified that he knew Clayton and that the latter drank with Equals the night of the "stand-up" several times and left the bar-room when Equals did. The evidence warranted the jury in believing Equals' testimony that Clayton was one of the two men who robbed him.

Defendant testified in his own behalf. He admitted being with Equals in the bar, talking and drinking with him, but denied that he was one of the men who went with him after leaving the saloon. His testimony was that coming out of the bar he went east up K Street to go to a movie show and finding it was too late he turned back, dropped into a restaurant for a sandwich, came out, and was on his way back along K Street when a man came up to him and asked for a match, and just then the officer came up, the other man ran, and he was himself then arrested. He testified that he got the corkscrew in a "wholesale house" in San Francisco, but he could not remember the name of the firm or the street where he obtained it. On cross-examination he admitted that he had been twice convicted of robbery, once in Washington and once in Pennsylvania.

We find among the records a transcript certified by the official reporter which purports to set forth all the rulings of the court and other matters to which objection was made at the trial. This transcript was afterward supplemented, on

order of this court, by a complete transcript. We have examined the alleged errors as shown by the first transcript but find none of sufficient gravity to warrant a reversal.

The judgment and the order are affirmed.

Hart, J., and Burnett, J., concurred.